IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MINNESOTA LAWYERS MUTUAL   )
INSURANCE COMPANY,         )
                           )
           Plaintiff,      )
                           )
v.                         )   Civil Action No. 3:08-CV-409-HEH
                           )
MICHAEL D. HANCOCK, et al., )
                           )
           Defendants.     )

**MEMORANDUM OPINION**
(Granting Plaintiff's Motion for Summary Judgment)

This case involves a dispute over whether a legal malpractice insurance policy issued by Minnesota Lawyers Mutual Insurance Company ("Minnesota Lawyers") provides coverage for a law firm and one of its partners. It is presently before the Court on Plaintiff Minnesota Lawyers' Motion for Summary Judgment (Dkt. 26) against all defendants, many of whom are former clients with potential or pending claims against the firm and at least one of its attorneys. Minnesota Lawyers and two defendants, N.J. Properties, LLC ("N.J. Properties") and Nayan K. Patel, have filed memoranda of law in support of their respective positions.[1] The Court heard oral argument on Plaintiff's Motion on February 12, 2009. For the reasons detailed herein, the Court granted Plaintiff's Motion for Summary Judgment on February 23, 2009.

---

[1] Although Minnesota Lawyers seeks summary judgment against all named defendants in this declaratory judgment action, only N.J. Properties and Nayan Patel have responded to Plaintiff's Motion. After reviewing their submissions, the Court is satisfied that N.J. Properties and Nayan Patel have adequately briefed the pertinent factual and legal issues.

## I. BACKGROUND

### A. <u>Factual Background</u>

In January of 2006, two solo practitioners, Michael Hancock and Stephen Dalton, merged their law practices to form a firm that they named–unsurprisingly–Dalton Hancock, PLLC (the "Firm"). Pl. Br. Ex. B. Upon forming the Firm, Hancock executed an "Adding an Attorney" form on May 5, 2006 to obtain malpractice insurance coverage under Dalton's existing "claims made" policy (the "Policy"), which was issued by Minnesota Lawyers.[2] *See* Pl. Br. Ex. C. When he completed the form, Hancock represented to Minnesota Lawyers that he was "[un]aware of any incident which could reasonably result in a claim being made against" him. Comp. ¶ 19.

Unbeknownst to both Minnesota Lawyers and Dalton, Hancock's representation was false. Beginning in February of 2005–over a year before he executed the Adding an Attorney form–and continuing through October of 2007, Hancock "embezzl[ed] money from [his] clients by moving money from [his] client escrow account to [his] operating account without [his] clients' authority and without having earned the money." Pl. Br. Ex. A ¶¶ 2-3. Hancock used the money embezzled from his clients, in part, to cover the Firm's overhead and operating expenses. Pl. Br. Ex. B at 61.

Hancock now candidly admits his past embezzlement and acknowledges that his conduct made his representations to Minnesota Lawyers in the Adding an Attorney form

---

[2]Dalton, in his capacity as the Firm's "Managing Partner", also executed the Adding an Attorney form.

false at the time they were made. *Id.* at ¶¶ 6-7. Hancock voluntarily reported his misconduct and surrendered his law license to the Virginia State Bar on October 24, 2007. *See* Pl. Br. Ex. I. A grand jury in Henrico County, Virginia subsequently indicted Hancock for embezzling funds belonging to Defendants Loretta Cook, Jay Patel, Nayan Patel, Josetta Neal, Deana Parker, and Gloria Dabbs. *See* Pl. Br. Ex. J-N. Hancock has since pled guilty to these charges. *See* Pl. Br. Ex. O.

Apparently, Dalton did not learn the specific details of his erstwhile partner's embezzlement until reviewing pleadings filed by the Virginia State Bar in the Circuit Court for the County of Henrico. Def. Br. Ex. A ¶¶ 15-16. Several months prior to Hancock's admission, however, Dalton submitted an application (the "Application") to Minnesota Lawyers on March 5, 2007 to renew the Policy for one year. In the Application, Dalton, on behalf of the Firm, certified that "the information previously supplied to [Minnesota Lawyers]" in the "firm's most recent application or addendums to the application"–including the Adding an Attorney form executed by Hancock in 2006–was still accurate. Pl. Br. Ex. D. at 1. Also included in the Application was a representation stating that no "firm member [was] aware of any INCIDENT which could reasonably result in a claim being made against the firm or a member of the firm." *Id.* Dalton later discovered that these representations were false.[3]

On June 21, 2007, Dalton, acting as the "President" and "Managing Partner" of

---

[3] No party contends, nor is there any evidence to suggest, that Dalton knew of Hancock's misdeeds prior to October 24, 2007, when Hancock self-reported his embezzlement to the Virginia State Bar.

3

the Firm and without personal knowledge of Hancock's malfeasance, executed a "Request-to-Issue" form in which he represented to Minnesota Lawyers that "there have been no significant changes in . . . any information contained in the previously submitted application(s)." Pl. Br. Ex. E. Dalton, on behalf of the Firm, further affirmed in the Request-to-Issue form that "the undersigned is not aware of any claims or circumstances that could result in claims or disciplinary actions that have not been reported to Minnesota Lawyers." *Id.* Relying on the Firm's prior representations, Minnesota Lawyers subsequently issued the Policy to the Firm for coverage from June 23, 2007 to June 23, 2008. Pl. Br. Ex. F at 2. The central issue before the Court is whether the misrepresentations made on behalf of the firm warrant rescission of the Policy or limitation of coverage.

## B. The Policy

The Policy issued by Minnesota Lawyers was a "claims-made" policy which provided insurance coverage for damages resulting from any claim against the insured:

> (1) arising out of any act, error, or omission of the Insured . . . ; and
> (2) resulting from the rendering or failing to render Professional Services while engaged in the private practice of law.

Compl. Ex. A at 1. The Policy, however, expressly excluded coverage for "any Claim for Damages arising out of the dishonest, criminal, malicious or deliberately fraudulent act, error, or omission of the Insured . . . ." *Id.* at 3. This exclusion was qualified in turn by an "Innocent Insureds" provision, which nonetheless afforded "coverage for any Insured who did not personally participate in or acquiesce to any actual or alleged dishonest,

4

criminal, malicious, or deliberately fraudulent act, error, or omission of another Insured" as long as the innocent insured "had no knowledge of or reason to believe that any such act, error, or omission was being committed." *Id.* at 4.

The Policy further contained a "Representation in Application" section which specifically incorporated "the application for coverage" previously executed by Dalton on behalf of the Firm as "part of this policy." Pl. Br. Ex. G at 8. The "Virginia Changes Endorsement" appended to the Representation in Application section also provided, in pertinent part:

> By acceptance of this policy the INSURED agrees:
> (1) the statements in the application are the representations of all INSUREDS
> (2) this policy is issued in reliance upon the truth of such representations.

*Id.* The Policy defined the term "Insureds" as the Firm itself as well as "any partner or employee of the Firm," including both Dalton and Hancock. Compl. Ex. A at 2.

### C. Procedural History

In October of 2007, Defendant Deana Parker, one of Hancock's former clients, commenced a lawsuit in state court against both Hancock and the Firm for damages arising out of Hancock's admitted embezzlement. *See* Pl. Br. Ex. H. Defendants N.J. Properties and Nayan Patel also sued the Firm in Henrico County Circuit Court in October of 2008. Apparently concerned about its potential liability for Hancock's malfeasance, Minnesota Lawyers instituted this action on June 30, 2008. Minnesota Lawyers now seeks a declaration from this Court either rescinding the Policy in full or

determining that there is no coverage under the Policy's terms for any claims by Defendants due to Hancock's embezzlement and the Firm's subsequent misrepresentations. Contending that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law, Minnesota Lawyers filed this Motion for Summary Judgment on January 9, 2009.

## II. STANDARD OF REVIEW

The Court may grant Minnesota Lawyer's Motion for Summary Judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that [Minnesota Lawyers] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists under Rule 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party." *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (internal quotations omitted). Mindful of the applicable legal standard, the Court now considers whether Minnesota Lawyers is entitled to summary judgment on its

claim for rescission of the Policy.[4]

## III. ANALYSIS

In Count Two of its Complaint, Plaintiff Minnesota Lawyers seeks a declaration from this Court that the Policy is "rescinded and void *ab initio*" because of the material misrepresentations and omissions made by Hancock, Dalton, and the Firm in obtaining the Policy. Before considering whether Minnesota Lawyers may rescind the Policy, however, the Court must first determine the appropriate legal standard that applies to Plaintiff's rescission claim.

### A. Applicable Legal Standard for Rescission of the Policy

To rescind an insurance policy because of an insured's misrepresentation, an insurer ordinarily must "show, by clear proof, two facts: (1) that the statement on the application was untrue; and (2) that the insurance company's reliance on the false statement was material to the company's decision to undertake the risk and issue the policy." *Commercial Underwriters Ins. Co. v. Hunt & Calderone, P.C.*, 540 S.E.2d 491, 493 (Va. 2001); *see also* Va. Code. Ann. § 38.2-309. However, when an applicant qualifies its statements by certifying that representations contained in an insurance application are only "correct to the best of [its] knowledge," the insurer must further demonstrate by clear proof that the insured's statements were *knowingly* false to obtain rescission. *Old Republic Life Ins. Co. v. Bales*, 195 S.E.2d 854, 856 (Va. 1973).

---

[4]Because the Court concludes that Plaintiff may rescind the Policy, the Court need not decide Count One of Plaintiff's Complaint, which asks the Court to declare that coverage for Hancock and the Firm is excluded under the terms of the policy. *See* Compl. ¶¶ 28-30.

7

Defendants urge the latter, more-demanding standard in this case. Nothing in the language of the Policy, however, permitted Hancock, Dalton, or the Firm to qualify their statements to Minnesota Lawyers by certifying that all representations were true and correct only to the best of their knowledge. Instead, the Firm–via Dalton, its "Managing Partner"–made an unqualified representation in the Application that no firm member was "aware of any INCIDENT which could reasonably result in a claim being made against the firm or a member of the firm." Pl. Br. Ex. D. Both Hancock and Dalton made a similarly unqualified statement when they categorically declared that all representations contained in the 2006 Adding an Attorney application were true. *See* Pl. Br. Ex. C at 2.

Defendants contend that Plaintiff must demonstrate that a knowingly false statement was made because the Application required Dalton, on behalf of the Firm, to certify that "a reasonable inquiry has been made . . . to ensure the accuracy of all information contained herein." *See* Def. Br. at 11. This language, however, did not permit Dalton or the Firm to qualify the representations contained in the Application. Rather, this provision imposed upon the Firm an additional affirmative duty to investigate the truthfulness of the statements made to its insurer.

The Policy's provision requiring the Firm to certify that it had conducted a reasonable inquiry into the truthfulness of its statements therefore was not the equivalent of language permitting an insured to warrant that its statements are only true to the best of its knowledge. Moreover, the Application's closing admonition that "failure to report any known claims or potential claims, or other material information may result in . . . policy

8

rescission" was merely a warning to the Firm, not a qualification of any previous representations of fact in the Application. Pl. Br. Ex. D at 2. Accordingly, Minnesota Lawyers need not demonstrate that any of the insureds knowingly made a false representation in their Application or related documents to rescind the Policy. Minnesota Lawyers instead may rescind the Policy by demonstrating–by clear proof–only that the Application contained a false statement and that the false statement was material to the company's decision to issue the Policy to the Firm.

### B. Whether Plaintiff May Rescind the Policy

*1. False Statements in the Application*

Review of Minnesota Lawyers' evidence reveals that the 2006 Adding an Attorney form and the Firm's Application for insurance coverage contained several false statements. Hancock himself was responsible for the first false statement, certifying in the Adding an Attorney form that he was not "aware of any incident which could reasonably result in a claim against" him. Pl. Br. Ex. C. at 2. Hancock now admits that this representation was false. Pl. Br. Ex. A. at 2. Dalton, acting on behalf of the Firm in his capacity as its "Authorized Officer," subsequently adopted Hancock's misrepresentation in the 2007 Application for coverage when he certified that "the information previously supplied to [Minnesota Lawyers]" in the Firm's most recent submissions–including the Adding an Attorney form–was "still correct." Pl. Br. Ex. D.

In the Application, executed in 2007, Dalton also represented that no member of

9

the Firm was "aware of any INCIDENT which could reasonably result in a claim being made against the firm or a member of the firm." Pl. Br. Ex. D. However, the admission of Hancock, a member of the Firm, that he had been embezzling money from his clients since February of 2005 clearly demonstrates that Dalton's representation on behalf of the Firm in the Application, albeit unwitting, was false when it was made. *See* Pl. Br. Ex. A ¶ 8.

Defendants argue that Hancock's knowledge of his criminal activity cannot be imputed to either Dalton or the Firm. No party contends that Dalton either knew or had reason to know of Hancock's misdeeds. But Defendant's argument ignores the plain language of the Policy in which the Firm, via Dalton, specifically agreed by its acceptance of the Policy that "the statements in the application are the representations of all INSUREDS," including Hancock. Compl. Ex. A at 7. By the language of the Policy itself, therefore, Hancock's misrepresentations were imputed to both the Firm and Dalton. If the Firm or its principals disagreed with this provision, they were free to bargain for different terms or to seek malpractice coverage elsewhere.

Defendants' argument also overlooks the applicable standard for rescission of the Policy, which does not require Minnesota Lawyers to demonstrate that Dalton or the Firm knowingly made a false statement. *See* Part III-A, *supra*. Plaintiff instead need only show, by clear proof, that a false statement was contained in the Application submitted to Minnesota Lawyers. Hancock's frank admission that his embezzlement began in 2005

and continued through 2008 clearly demonstrates that the answers contained in the 2007 Application were false. That Dalton did not know they were false when he made them on behalf of the Firm is immaterial.

Nothing prevented the Firm from bargaining for a provision permitting it to qualify the Application's factual representations as true only to the best of the Firm and Dalton's knowledge. *See Bales*, 195 S.E.2d at 856. Inclusion of such a provision in the Application or the Policy would have imposed an additional burden on Minnesota Lawyers to demonstrate that Dalton actually knew he was making a false representation when he affirmed that no member of the Firm was "aware of any INCIDENT which could reasonably result in a claim being made against the firm or a member of the firm."[5] Pl. Br. Ex. D. Because the Application contained no such qualification, however, Plaintiff need only demonstrate that the representation was false, not that Dalton or the Firm actually *knew* it was false. Considering the evidence produced by Plaintiff–and Hancock's admissions in particular–the Court thus concludes that no genuine issue of material fact exists regarding whether false statements were included in the application materials submitted to Minnesota Lawyers.

### 2. *Materiality of False Statements*

To rescind the Policy, Plaintiff must also demonstrate by clear proof that its

---

[5]This, of course, would raise the separate issue of whether Hancock's knowledge automatically was imputed to the Firm as a matter of law. Because Hancock's knowledge clearly is imputed to both the Firm and Dalton by the language of the Policy itself, however, the Court need not decide this issue.

11

reliance on the false statements contained in the Adding an Attorney form and Application was material to the company's decision to undertake the risk of insuring the Firm. *See Harrell v. North Carolina Mut. Life Ins. Co.*, 213 S.E.2d 792, 794-95 (Va. 1975). "A fact is material to the risk to be assumed by an insurance company if the fact would reasonably influence the company's decision whether or not to issue a policy." *Mutual of Omaha Ins. Co. v. Echols*, 154 S.E.2d 169, 172 (Va. 1967). When, as here, Plaintiff establishes a misrepresentation by clear proof, "its materiality is a question of law for the court." *Harrell*, 213 S.E.2d at 794 (citing *United States Fidelity and Guaranty Co. v. Haywood*, 177 S.E.2d 530, 532 (1970)).

The Policy at issue contains standard, form language warning the insureds that the representations made in the Application "are material as this policy is issued in reliance upon the truth of such representations." Compl. Ex. A at 7. But such "boilerplate language" is "far from the clear proof required to show [materiality]" and thereby rescind the Policy. *Commercial Underwriters*, 540 S.E.2d at 493; *see also* Va. Code. Ann. § 38.2-309. Virginia law mandates a greater showing of materiality to satisfy the clear proof requirement of Section 38.2-309.

Plaintiff, however, relies on more than just the rote language of the Policy to establish materiality. Affidavits submitted by Minnesota Lawyers indicate that the company relied on the several misrepresentations contained in the Adding an Attorney form, the Application, and the Request-to-Issue form in issuing the Policy. *See, e.g.*, Pl.

Br. Ex. P ¶ 2 (indicating that Minnesota Lawyers relied on the Firm's false representation in the Application that no "firm member [was] aware of any INCIDENT which could reasonably result in a claim being made against the firm or a member of the firm"); *see also* Pl. Rebuttal Br. Ex. A. According to Minnesota Lawyers' affidavits, these misrepresentation were "material to [Minnesota Lawyers'] decision to undertake the risk and issue the Policy" because the company would have declined to issue the policy had the Firm responded truthfully. *See* Pl. Br. Ex. P ¶¶ 3-4. Defendants have offered no evidence to the contrary.

The affidavits produced by Plaintiff thus demonstrate by clear proof that knowledge of Hancock's misdeeds "would [have] cause[d] [Minnesota Lawyers] to reject the risk" of insuring the Firm "or to accept it only at a higher premium rate." *Chitwood v. Prudential Ins. Co. Of Am.*, 143 S.E.2d 915, 919 (Va. 1965). Common sense also suggests that an insurance company would either significantly limit or decline to provide insurance coverage–or, at the very least, charge a substantially higher premium–under these circumstances. Plaintiff therefore has fulfilled its burden of demonstrating that no genuine issue remains regarding the materiality of the false statements made by the Firm in the materials submitted to Minnesota Lawyers to obtain insurance coverage.

### 3. *Plaintiff Is Entitled to Judgment as a Matter of Law*

Plaintiff has satisfied its burden of demonstrating that no genuine issue of fact exists as to whether material false statements were contained in the application materials

submitted by Hancock, Dalton, and the Firm. Because Plaintiff has made the requisite showing by clear proof, the Court therefore concludes that Plaintiff is entitled to judgment as a matter of law on its claim for complete rescission of the Policy. *Commercial Underwriters*, 540 S.E.2d at 493; Va. Code. Ann. § 38.2-309.

That Dalton was unaware of Hancock's embezzlement does not prevent rescission of the Policy as to all insureds. The Policy did contain an Innocent Insureds provision which, absent rescission, may have afforded Dalton coverage under the facts of this case. But the Policy's Innocent Insured provision "does not reference or preclude the remedy of rescission for a material misrepresentation." *TIG Ins. Co. v. Robertson, Cecil, King & Pruitt*, No. 101CV143, 2003 WL 253167, at *3 (W.D. Va. Jan. 31, 2003), *aff'd*, No. 03-1259, 2004 WL 2603660 (4th Cir. Nov. 17, 2004) (unpublished). To the contrary, "there is an obvious difference between affording coverage to an innocent insured under [the Innocent Insured] provision and rescinding the Policy because the . . . Firm, through its authorized partner, lied on the application." *Id.* The Policy therefore is rescinded as to all insureds notwithstanding Dalton's lack of personal knowledge of Hancock's misdeeds.[6]

## IV. CONCLUSION

For the reasons detailed herein, Plaintiff's Motion for Summary Judgment is granted. Due to material misrepresentations contained in the application materials submitted to Minnesota Lawyers by the Firm, the Policy is rescinded in its totality.

---

[6] In fact, Plaintiffs represent that they have already issued Dalton a separate policy providing coverage for any liability he may face due to Hancock's actions.

14

An appropriate Order was issued in accordance with this Memorandum Opinion on February 23, 2009.

                                                                     /s/
                                                      Henry E. Hudson
                                                      United States District Judge

ENTERED this **3rd** day of **March**, 2008.
Richmond, VA